No. 385

First Circuit

VINCENT ET AL. v. ELEAZAR ET AL.

(January 21, 1929. Opinion and Decree.)

J. E. Kibbe, of Abbeville, attorney for plaintiff, appellant.

Broussard and Samson, of Abbeville, attorneys for defendant, appellee.

LECHE, J. Paul E. Eleazar held a note for two hundred twenty-four and 20-100 dollars ($224.20) made and subscribed by Willie Vincent and endorsed by Gerasin Vincent, Euphemon Vincent and Duplessis Vincent. The maker and endorsers having failed to pay the note at maturity, Paul E. Eleazar recovered judgment for the full amount of the note, $224.20, together with

8% interest, 10% additional as attorney's fees and costs of court, on May 21, 1927, against Willie Vincent, maker, and Gerasin Vincent, Euphemon Vincent and Duplessis Vincent, endorsers, in solido. On the day the judgment was rendered, it was recorded in the mortgage records of the Parish of Vermilion and thereafter affected as a judicial mortgage all the immovable property of Willie Vincent and his co-defendants, situated within the Parish of Vermilion.

On October 28, 1927, Willie Vincent sold to Meaux Brothers a tract of land situated in the Parish of Vermilion, containing twenty-four (24) acres, as well as any other property, though not specifically described in the act of sale, which he, Willie Vincent, might own in the Parish of Vermilion. This sale was made in consideration of four thousand five hundred sixty-four and 82-100 dollars, represented by past due notes of Willie Vincent held by Meaux Brothers, which notes were surrendered as "paid in full," by the vendees to the vendor.

On the day the sale was made by Willie Vincent to Meaux Brothers, Paul E. Eleazar signed the following document, which was presented to the Clerk and Recorder of Vermilion Parish:

"Abbeville, Louisiana.
"October 28, 1927.
"To P. L. Broussard, Clerk of Court and ex-officio Recorder of Mortgages of the Parish of Vermilion, Louisiana.
"You are hereby authorized and empowered to release from the effects of the judicial mortgage recorded in Vol. 86, at folio 167, under entry No. 43,407, of the mortgage records of your office, and resulting from the inscription of the judgment in my favor and against Willie Vincent et als., the following described property, to wit:
"In the Parish of Vermilion, Louisiana, one certain tract of land containing twenty-four acres, more or less, and being located partly in the west half of the southwest quarter of the southwest quarter of Section fourteen and partly in the west half of the northwest quarter of the northwest quarter of Section twenty-three (23) Tp 12 S. R 1 East, together with all and singular the buildings and improvements thereon situated and thereunto belonging. The property ordered released from the effects of the above mentioned judicial mortgage being the same which was this day purchased by Desiré and Leonard Meaux from Willie Vincent.
"(Signed) Paul E. Eleazar
"Broussard & Samson (Attys.)"

Plaintiffs in this suit are Gerasin, Euphemon and Duplessis Vincent who originally were endorsers on Willie Vincent's note and who were condemned in solido with Willie Vincent for the full amount of said note in the judgment obtained by Paul E. Eleazar. Their demand is to have themselves released of all responsibility for the amount of the judgment, on the ground that they are merely sureties for Willie Vincent and that by cancelling and annulling the inscription of the judgment in so far as it affected the property of Willie Vincent, principal debtor, Eleazar has released them from all responsibility as sureties. The suit is summary and by way of rule against Eleazar and the Clerk and Recorder of the Parish of Vermilion.

The District Court refused the demand of plaintiffs and they have appealed.

Additional facts which may have some bearing upon the question presented for decision in this case, are, that Paul E. Eleazar received seventy-five dollars as a consideration for issuing and signing the authorization to cancel the judicial mortgage, and that he did so without the knowledge and consent of the plaintiffs Gerasin, Euphemon and Duplessis Vincent. It does not appear, however, whether he released Willie Vincent from all liability under the judgment which he had obtained,

but the presumption is that he did not release him. The judgment in point of fact has never been credited in any sum whatever by Paul E. Eleazar. Nor is it questioned that Paul E. Eleazar knew that Willie Vincent was his principal debtor and that plaintiffs although condemned unconditionally and in solido in the judgment, were only secondarily liable as sureties.

Plaintiffs' main reliance is upon C. C. Art. 3061, which provides that the surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety. Commenting on this article of the Code, the Supreme Court held in the case of New England Mutual Life Insurance Company vs. Randall et al., 42 La. Ann. 260, 7 So. 679, that the right of subrogation to the rights of the creditor is an essential part of the contract of suretyship and therefore, that if the creditor does any act without the surety's consent, which impairs his rights of subrogation or the means of enforcing his claim against the principal in case he should pay the debt, the surety will be discharged. Article 3062 of the Civil Code further provides that the voluntary acceptance on the part of the creditor of an immovable or any other property in payment of the principal debt, is a full discharge of the surety, even in case the creditor should be afterwards evicted from the property so accepted. In the case of the New Eng. Mut. Life Ins. Co. vs. Randall, already cited, it is held that when the creditor intends to look to the surety for payment, he is compelled to preserve unimpaired all his rights against the principal debtor.

The law as above stated, seems to be clear and unequivocal, but in the case of Interstate Trust & Banking Co. vs. Young, 135 La. 470, 65 So. 611, is to be found the enunciation of a principle which seems to restrict the rights of a surety, where the security for the debt is impaired. This restriction no doubt is founded upon equity, but appears to qualify the articles of the Code. It is there said that if the holder (the creditor) impair these securities (for the principal debt) he, to that extent loses his recourse against the endorser (the surety). The words "to that extent" imply that the surety is only released in part, up to the amount lost by the impairment. No doubt the defendant Eleazar will claim that the impairment in this case, the release of the judicial mortgage upon the property of the principal debtor, Willie Vincent, only amounts to $75.00, and that the sureties' rights are only impaired up to that amount, and for that amount, he, Eleazar, is willing to release them.

Of course Eleazar could have ordered the cancellation of the judicial mortgage without receiving any consideration for so doing, in so far as his own rights and interest were concerned, but according to the articles of the Code, as construed in the New England Mutual Life Insurance case, he impaired and destroyed the right of subrogation which the plaintiffs were entitled to acquire in the event they paid to him the indebtedness of Willie Vincent, the principal debtor, and this he did without the consent of the plaintiffs, who are sureties. Obviously by signing the release or order to cancel the judicial mortgage, his act made it impossible to subrogate the sureties to the judicial mortgage.

The statement of law which is excerpted from the case of Interstate Trust & Banking Co. vs. Young, as already said, seems to add a qualification to the articles of the Code heretofore cited in this opinion, and seems to conflict with the principle enunciated in the case of Maguire vs.

Woolridge, 6 Rob. 50, to the effect that "It is a well settled rule that the surety has the right to stand upon the very terms of his contract, even if he should be benefited by the change, and the creditor has no right to make any such change." What is said in the Maguire case is quoted approvingly by the Court in Orleans & J. Ry. Co. vs. International Construction Company, 113 La. 413, 37 So. 11. See also Savings & Homestead Assn. vs. Frank, 146 La. 218, 83 So. 491.

In the case of Hill & Co. vs. Bourcier and Pond, 29 La. Ann. 844, the principle which restricts the right of the surety to a discharge proportioned in amount to the value of the security which the creditor has abandoned or given up, is announced in almost identical language with that used in the decision of Interstate Trust & Banking Co. vs. Young. That principle is now embedded in the jurisprudence of this State and this Court is bound to accept it without question. Now if we apply it in this case, it can be of little benefit to Eleazar, for the value of the security abandoned by Eleazar was a judicial mortgage equal in amount to the debt resting upon the sureties. The judicial mortgage was for two hundred and forty dollars with attorney's fees, interest and costs, and it rested upon property which sold for over four thousand five hundred dollars. It may be that Eleazar did not consider his judicial mortgage on account of its inferiority in rank, worth more than seventy-five dollars, but he had no right to compromise as to its value without the consent of the sureties, the plaintiffs in this case. He could make no change in the condition of his rights as mortgage holder nor abandon his mortgage without the consent of plaintiffs. 6 Rob. 50. He might with as much reason have given the principal debtor an exten-

sion of time to pay the debt, on the ground that such an extension would be to the advantage of the sureties.

It appears then that Eleazar having by his act, made it impossible to subrogate the plaintiffs, as sureties, to his right of mortgage against the principal debtor, they are released entirely from all responsibility for the debt.

For these reasons, the judgment appealed from should be avoided and reversed, and plaintiffs should be recognized as released from all liability under the judgment rendered against them and in favor of Eleazar on May 21, 1927, and said judgment should be ordered to be cancelled and erased in so far as it affects them; and it is so ordered.