G. H. HUFFMAN

*v.*

J. H. MILLS

(No. 9931)

Submitted January 14, 1948. Decided March 16, 1948.

H. *Paige Bell, Jr.,* and *S. P. Bell,* for plaintiff in error.

*Lewis D. Archer,* and *Thayer M. McIntire,* for defendant in error.

RILEY, PRESIDENT:

This is a proceeding under Chapter 1, Acts of the West Virginia Legislature, 1945, to ascertain the true boundary line between lands of the plaintiff and the defendant. The issue raised by the petition served on defendant and the answer of the latter was tried before a jury, which returned a verdict establishing the disputed boundary line at the location claimed by the defendant. A motion to set aside the verdict as contrary to the law and the evidence was overruled and an exception noted. The plaintiff brings error to this Court.

In his petition plaintiff avers, among other things, that he is the owner in fee and has the right of possession, by virtue of a conveyance from C. D. Bowyer and wife in 1945, of a certain described tract, containing 300 acres, more or less, the western boundary beginning at a stake, pointers and sugar tree in edge of river bank, thence S 27½ W 62 poles to a white oak on the upper side of Tingle Run, a corner to Francis Karns; "thence with his line in a southerly direction 280 poles to the back line of said tract * * *"; that the defendant owns an adjoining tract on the easterly side thereof, by deed from Charles D. Gray made in 1946, in which the western boundary begins with a stone with mulberry and walnut pointers, thence N 24 E 242 poles to a w. o. on mound, corner of L. H.

Wells' land, etc., containing 232 acres, more or less; that the boundary line between the two parties is in dispute; that the plaintiff is advised and believes he is entitled to apply to the court to have the true line ascertained and designated; that plaintiff's line from the white oak, a corner to Francis Karns, as set out does not designate a bearing on which said line should be run; that defendant, Mills, claims the course to be N 24 E or S 24 W; that plaintiff invites attention to the fact that in the deed of 1901 from T. A. Brown, special commissioner, to Charles D. Gray, defendant's immediate grantor, the division line in dispute is described as "thence a southerly direction S 11 W 351 poles to a stake in back line"; that this description first appeared in a tax deed to D. H. Leonard, in 1870, as well as in Leonard's deed to George Woods; and that plaintiff further alleges that the true boundary line between the two tracts is S 11 W 280 poles, more or less, to the back line of said tract; and prays that the court ascertain and designate the true boundary.

Defendant, in what is denominated an answer, denies that plaintiff is the owner as described by metes and bounds in his petition or of any lands lying east of a boundary line beginning at a white oak on a mound, a corner to the lands of Francis Karns, and running thence with his line southwardly (S 24 W) 280 poles to the back line of the D. Wilkinson tract of 400 acres; he admits that he is the owner of the tract conveyed to him by Gray in 1946, and that there is a dispute as to the true location of the division line from a white oak to back line of Wilkinson's 400-acre tract. He further asserts that the correct line is on the course S 24 W 280 poles, or N 24 E as reversed, and that the same has been established, recognized and admitted by coterminous owners for over forty years; he admits that the deed executed by Brown, special commissioner, the deed by Leonard and the tax deed each describes the line now in dispute as S 11 W 351 poles; and avers that such course and distance are erroneous and do not in fact inclose all of the 115 acres of land conveyed to Francis Karns, and actually sold at the tax sale to Leonard.

Defendant further charges that while plaintiff would have the line established on the course S 11 W, the latter makes no effort to ascertain or show the true location of the Karns lines and corners; and that the deed to plaintiff does not extend by its description 'beyond the line as claimed by defendant. Everything except such of the land as lies east of a boundary line, S 24 W 280 poles to a stake with mulberry and walnut pointers, is disclaimed. The answer then sets out defendant's chain of title to the 115 acres, beginning with a deed made in 1843 from Stinger to Wilkinson for 400 acres, a deed of 1864 from Wilkinson, purporting to convey 115 acres from the eastern part of said 400 acres aforesaid, and a deed of 1865 from Wilkinson to The Imperial Burning Springs Petroleum Company, conveying the residue of the 400-acre tract. Defendant also charges that the sale and conveyance from Wilkinson to Karns was by the acre, and that the division line therein, beginning with the white oak, must be run on a course so as to include 115 acres within said boundaries; that he is now the owner of said 115 acres and the residue of the 400 acres is in Huffman, the plaintiff; and that to include such amount the line should be on a course of S 24 W 280 poles.

At the outset, we deem it necessary to· deal more at length with a few of the title papers, and the factual situation regarding the actual possession of the properties involved, as revealed by the record made before the trial court.

In 1843 Wilkinson, the owner of a tract containing 135 acres and lying south and east of the Little Kanawha River, purchased the Stinger 400 acres on the west, the properties adjoining each other along the general line S 16¼ W 313 poles. The calls in the deed from Stinger to Wilkinson begin with a sugar tree and beech, on the banks of the Little Kanawha, the fifth corner of an original line; thence up said river two calls (generally east) to "stake-pointers-sugar tree bush"; and thence S 40 E 50 poles to· "stake on river bank" (corner to Wilkinson 135-acre tract). In 1864 Wilkinson conveyed his original tract

of 135 acres, together with a rectangular strip from the eastern portion of the Stinger lands, a total of 250 acres, to Karns. The western limits of this rectangular strip begin at the "stake-pointers-sugar tree bush" heretofore mentioned, thence ˚S 27½ W 62 poles to a "white oak standing on a mound", and "thence a southerly direction to the back line of said D. Wilkinson tract 251 poles; * * * so as to contain within the boundaries of said piece or parcel of land one hundred and fifteen acres of land."

The following year, 1865, Wilkinson conveyed the remainder of the Stinger 400 acres to The Imperial Burning Springs Petroleum Company. The calls in this deed begin with the "sugar tree and beech" and continue up the river to the "stake-pointers-sugar tree bush; thence S 27½ W 12 poles to a white oak standing on a mound * * * corner to Francis Karns; thence with Karns' line in a southerly direction 280 poles to the back line of the tract; thence with the said line N 48 W 120 poles to the last line of John McFarland Survey in the right settlement; thence N 4½ E to beginning."

Huffman, whose title goes back through mesne conveyances to The Imperial Burning Springs Petroleum Company, received his deed from one C. D. Bowyer, under date of November 5, 1945. Defendant Mills, who claims under the Karns 1864 deed, took his deed from Gray dated March 1, 1946. The Karns property became delinquent and was sold for taxes in 1870 to Leonard,. the course "S 11 W" being inserted parenthetically. All subsequent deeds in this chain down to and including the deed to Gray in 1901 carried the last-mentioned course without the parenthesis.

In support of S 24 W as the course of the disputed line, defendant introduced testimony to the effect that, in 1902, Gray, his predecessor, and Levi Wells, who then held the adjoining tract, through The Imperial Burning Springs Petroleum Company and others, had settled their differences with respect to the division line between them by establishing the same on the aforesaid course. Such agreement does not bear the marks of an attempt to avoid the

statute of frauds. It was admissible under the rule laid down in point 5, syllabus, *Teass* v. *City of St. Albans,* 38 W. Va. 1, 17 S. E. 400: "Disputed boundaries between adjoining lands may be settled by express oral agreement, executed immediately and accompanied by possession according to such agreement."

It appears that survey was made of the line at that time, and a stone was placed in the back line at the point where the southerly line on the course S 24 W, or N 24 E, from the white oak intersected the back line of Wilkinson's 400 acres. In fact, a survey was made of defendant's entire tract at that time. The trial court permitted this paper to be introduced in evidence over plaintiff's objection that it was a private survey, and plaintiff excepted to the ruling. We are of opinion the survey was properly admitted in support of the fact that the parties had adjusted their differences with respect to the course upon which the division line should be run, namely, S 24 W, or N 24 E. There is testimony to the effect that a stone, properly marked, was placed at the point in the back line where the division line intersected; that "line trees" were marked; that a fence was built generally along the given course; that since that time (1902) up to the time of the transfer to plaintiff, and up to the time of the institution of the present proceeding, defendant or his immediate predecessor has been in possession of the area in dispute. It appears that Gray grazed the land, cut timber therefrom, and also cultivated parts of it. There is also testimony to the effect that during the present litigation the stone corner was found to be at the end of the disputed line when surveyed.

Plaintiff maintained throughout the trial of this case that this is a proceeding under the statute to establish a "disputed boundary line", and does not purport to try title; and that such is the purpose and scope of the statute. However, defendant asserted that by express provision of the statute he was entitled to invoke all common law defenses, including those offered to a litigant in ejectment. See *Christian* v. *Bulbeck,* 120 Va. 74, 90 S. E. 661,

dealing with a statute similar to our own. In a case, as here, where two definite and conflicting lines are injected into the proceeding—the defendant setting up a line different from the one proceeded on in the petition—it would seem that of necessity title comes into issue. If the plaintiff in such a case cannot show actual and adverse possession of the strip between the contended for lines, he must recover, if at all, on the strength of his own title papers. *Griggs* v. *Brown*, 126 Va. 556, 102 S. E. 212.

In the *Christian* case, the Virginia Court in dealing with their statute, which is substantially the same as ours, says that it gave the court jurisdiction to pass upon the title to the land included in the boundary line or lines fixed by the judgment of the court in a proceeding under the act. And further, by way of argument, it says: "The concluding provisions of the act, that 'The judgment of the court shall, unless reversed, forever settle and determine and designate the true boundary line or lines in question, and be binding upon the parties to such petition, their heirs, devisees and assigns,' seem to us to be conclusive of this question and to decide it in the affirmative. The act also provides that, 'The trial shall be conducted as other trials at law and the same rules of evidence shall apply and *the same defenses may be made as in other actions at law* * * *.' (Italics ours). Hence, adverse possession, whether with or without color of title, under a plea of the statute of limitations, is a defense which may be made under such act."

Plaintiff takes the position that due to the recitation in the tax deed of 1870 to the effect that the parcel "has been surveyed and laid off" by the county surveyor, "and a plat and certificate thereof made by him describing the said land", the southerly line from the white oak was thereby established as "S 11½ W 351 poles to a stake in the back line", and that the reference in the Bowyer deed of 1945, under which he holds, to the white oak on a mound as "a corner to Karns", plus the next call, "thence with Karns in a southerly direction 280 poles to the back line of the tract", takes him to S 11½ W line. He claims that the tax deed created a new title which was in no

privity with the Karns title, and that subsequent purchasers were thereby limited to the acreage contained within the tax deed boundaries, regardless of the Karns deed of 1864.

Plaintiff concedes, in brief, that if the Karns land had been surveyed at the time of the conveyance to him on September 17, 1864, and the line from the white oak on the mound had been run on such a bearing as to include 115 acres in the boundary, the line would have been approximately on the S 24 W bearing. "But", he continues, "the line was not surveyed and located at that time and afterwards the tax deed intervened, fixing the line on a bearing of S 11½ W without regard to the quantity contained in the boundary."

The defendant, as indicated by his pleading, challenges plaintiff's theory. It is defendant's contention that plaintiff's case must stand or fall on the latter's title papers, and not on the acknowledged error which the tax deed injected into the defendant's paper chain of title; and, further, that in order to determine a true line, the plaintiff is bound by the calls in the Wilkinson deeds of 1864 and 1865. He points out that when these two deeds are considered, it is crystal clear that the only matter to be determined is the course of the southerly line. In the deed of 1864 to Karns the line runs 251 poles to a "stake" in the back line, and thence to the east; and in the Petroleum Company's deed of 1865, while the course is still absent, the line runs 280 poles to a "stake" in the back line, and on reaching the same, the next course is to the northwest, a distance of 120 poles to the McFarland line. This latter deed tends to show the terminal point of the southerly line in the 1864 deed, because it, according to the calls, runs with the former Karns line. This of itself fixes the course approximately on a 24 degree bearing, or slightly farther to the west.

When Gray took a deed for the 115-acre tract in 1901, it appears that some sort of line existed in the neighborhood of the 24 degree line contended for by the defendant herein; and the record shows that Levi Wells, a former

owner in plaintiff's chain of title, consented to the 1902 survey of the line, paid a part of the cost thereof, and recognized the same as the boundary between his lands and those of the defendant's predecessor Gray. A fence was built at that time, a part of which seems to have been off line to accommodate a roadway which would otherwise cross it a number of times. Defendant and his predecessors have, for more than forty years, been in actual possession up to the 24 degree line.

So, under the state of the record, plaintiff's claim to have the line on the S 11 W course presents the question whether he must go back to the Wilkinson conveyance, or be permitted to rely on the tax deed in defendant's chain of title. We are of opinion that he must resort to the former procedure, and, in failing to do so, he is not entitled to prevail.

Plaintiff asked for only one instruction, which was given. However, he complains of the giving of defendant's instructions Nos. 2, 3, 4, 6, 9, and 11-A. No objection was noted to instruction No. 3 in the trial court. The only objection to instructions Nos. 2, 4 and 9 was the statement that such instructions did not properly state the law. Such an objection does not comply with Rule VI (e), 116 W. Va. LXiii, and the holding of this Court in *Horchler* v. *Van Zandt*, 120 W. Va. 452, 199 S. E. 65-67.

Defendant's instruction No. 6 told the jury, in effect, that if they believe from the preponderance of the evidence in the case that the boundaries set forth in the deed from D. Wilkinson to Francis Karns actually cover and convey the land in dispute up to the line claimed by the defendant, then the plaintiff cannot have "legal title" to the land in dispute and the verdict should be for the defendant. As to the quoted part, plaintiff says that according to this instruction it would not matter what kind of title the plaintiff has to the land. While the clause including "legal title" possibly should have read "then the plaintiff cannot have any right to the land in dispute", we do not think the plaintiff was prejudiced in any way.

Plaintiff contends that the giving of defendant's instruction No. 11-A constitutes prejudicial error for the reason that it tells the jury, in part, that "the burden is upon the plaintiff in this case to establish the true location of that line [from the white oak corner on the mound, corner to Francis Karns land, thence with his line to the back line of the 400-acre tract] as of the date of the deed to Francis Karns". We find no error in the quoted part of the instruction for the reason heretofore stated. Since, as we have already indicated, the plaintiff cannot rely upon the erroneous course in the tax deed and both parties hold their lands through mesne conveyances from the Wilkinson 400 acres, plaintiff's line having come from an original deed which is junior to that of defendant, which calls for a corner and line in the senior conveyance out of the 400-acre tract, an adjoinder and not an interlock is involved; and that being so, in order for plaintiff to establish his line, he must go back to the Karns corner. *West Virginia Pulp & Paper Company* v. *Natwick & Company*, 123 W. Va. 753, 21 S. E. 2d 368.

The judgment of the Circuit Court of Wirt County is affirmed.

*Affirmed.*