WESTOVER VOLUNTEER FIRE DEPARTMENT, INC.

v.

RAYMOND W. BARKER

(No. 10805)

Submitted September 18, 1956. Decided December 22, 1956.

*Ezra E. Hamstead, Tusca Morris,* for plaintiff in error.

*Minter L. Wilson, Oakley J. Hopkins, Glenn Hunter,* for defendant in error.

RILEY, JUDGE:

This is a proceeding tried before the Judge of the Circuit Court of Monongalia County, acting in lieu of a jury, instituted under Code, 1931, Chapter 55, Article 4, as amended by Section 31, Article 4, Chapter 1, Acts of the Legislature, Regular Session, 1945, by adding thereto a new section to be designated as "section thirty-one", pertaining to the ascertainment and designation of boundary lines between coterminus landowners, to establish a line between the coterminus holdings of the petitioner therein, Westover Volunteer Fire Department,

Inc., a corporation, and Raymond W. Barker, the defendant.

The Judge of the Circuit Court of Monongalia County, as disclosed from his written opinion, made a part of the record, on his own volition viewed the premises in controversy, evidently without the consent of the parties litigant, or their attorneys, and, as disclosed by his memorandum, dated July 25, 1955, decided the case in favor of the petitioner, Westover Volunteer Fire Department, and against the defendant, Raymond W. Barker, solely upon his view, thus establishing the line between the land claimed by petitioner and that claimed by the defendant by ordering that the true boundary line between the two properties began "at a hub in the northerly edge of Holland Avenue; thence *North 6° 27′ East* 253.20 *feet to a hub;* thence North 83° 33′ West 162.80 feet to a hub in the eastern edge of Lane Street, as shown on plaintiff's Exhibit No. 2 filed with said plaintiff's petition." (Italics supplied).

At this point we note that there is no statutory authority for a trial judge, trying a case in lieu of a jury, to take a view. Code 56-6-17, provides, in cases tried with a jury, as follows: "The jury may, in any case, at the request of either party, be taken to view the premises or place in question, or any property, matter or thing relating to the controversy between the parties, when it shall appear to the court that such view is necessary to a just decision, and in such case the judge presiding at the trial may go with the jury and control the proceedings; and in a felony case the judge and the clerk shall go with the jury and the judge shall control the proceedings, and the accused shall likewise be taken with the jury or, if under recognizance, shall attend the view and his recognizance shall be construed to require such attendance. * * *"

Though the final order adjudicating the boundary line entered by the trial judge on July 25, 1955, reads: "And the Court now being fully advised of its judgment, and

having duly considered all the evidence presented in this cause, all papers filed and proceedings had herein," the opinion of the trial Judge discloses that he did not, in fact, and in this regard this Court will take the statements made in the trial Judge's opinion as true, consider the record, and, in particular, the testimony of C. W. McCutcheon, a qualified engineer, who testified on behalf of the petitioner without making a survey of the premises and lines in controversy, but on the basis of platting certain descriptions of the land, contained in the various deeds in evidence, and the testimony of defendant's witness, Marion F. Dunbar, a registered engineer, who was the only qualified witness who made a complete survey of the property, examined the deeds in evidence, and testified in contradiction to McCutcheon's testimony. Only a few quotations from the opinion of the trial judge convince this Court that the result reached by the trial court was solely on the basis of his view of the premises. This opinion states *inter alia* that:

> "If in ascertaining the boundary here in dispute it were necessary to apply these general legal principles this would become a very close and difficult legal question. Fortunately a correct result can be arrived at here without the necessity of interpreting the multitude of decisions involving boundaries.

\* \* \* \*

> "A view of the premises also indicates rather clearly how the common grantor, L. V. Keck, *come* to make the original error in his conveyances, back about the turn of the century, out of which this controversy arises. It is clear that in viewing his tract of ground as a whole he believed that it was rectangular in shape, with the exception of the slight curve in Holland Avenue, upon which it fronted. His conveyances, without benefit of survey, were made upon that erroneous assumption. No other conceivable theory could explain the overlap which resulted, particularly since Mr. Keck was at the time quite experienced in preparing conveyances of land."

In addition, as appears from the fourth paragraph of the trial Judge's opinion, the Judge in this statutory proceeding, which was on the law side of the court, in which the balance of equities has no application, undertook to balance the equities between the two contending parties in the following language:

> "The most helpful guide to the Court has been a view of the premises. The terrain is such as to almost completely establish a natural boundary between the properties. A high bank marks a considerable portion of that boundary. To give to the Defendant the line contended for by him would not add One Hundred dollars ($100.00) to the value of his property. The added portion of ground which he would receive would not to a large extent be usable by him. On the other hand to establish the line as contended for by the Defendant, would make the remaining portion of the Petitioner's land practically useless insofar as the use to which they are now putting it is concerned. It would decrease by at least half its value for resale purposes."

This Court has held that even where there is a view by a jury, which is authorized in the exercise of the sound discretion of the trial court by Code, 56-6-16, that a view by a jury, though it is to be considered as evidence, together with the other evidence in the case, is insufficient of itself to justify the trial court in entering judgment on the basis of what the jury saw on the view. *A fortiori*, the rule should be applied in this case where the Judge, without statutory authority, though he may have acted within the inherent power of the court over which he presides (a question which we do not need to decide), took a view of the premises, and, as this record discloses, without the consent or presence of the parties litigant or their attorneys.

The latest pronouncement of the rule governing views by juries in law actions, is contained in *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 836, 62 S. E. 2d

126, in which this Court, directing attention to the opinion written by Judge Fox in the case of *Thorn, Admr.* v. *Addison Bros. & Smith,* 119 W. Va. 479, 484, 194 S. E. 771, and the opinions, respectively, of Judge Haymond in *Tennessee Gas Transmission Co.* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584, and Judge Rose in *Doman* v. *The Baltimore and Ohio Railroad Co.,* 125 W. Va. 8, 22 S. E. 2d 703, and citing from 11 M. J., Jury, Section 65, stated: "By the limitation on the evidentiary effect of the jury view suggested in the *Tennessee Gas Transmission Company* and *Doman* cases, this Court did not depart from the position which prevails in this jurisdiction that a jury view may be considered by a jury, together with the evidence introduced by plaintiff and defendant. Clearly, in the sense that matters brought to the attention of the jury on a view of the premises, the view is evidence. But a jury view will not serve to take from the party upon whom the burden of proof lies the duty of introducing sufficient other evidence on which the jury could properly hold that the party upon whom the burden of proof lies has sustained that burden by evidence other than the jury view." See also a treatise concerning the cases in this jurisdiction, involving a view of the premises by a jury during the course of a trial, which was read by Dr. T. Porter Hardman, then Dean of the College of Law of West Virginia University, at a meeting of the West Virginia Judicial Association, on October 6, 1950. 53 W. Va. Law Review 103.

This Court does not by the foregoing impugn the integrity or the ability of the Judge of the Circuit Court of Monongalia County in deciding the instant case on the basis of the *ex parte* view which he took of the premises.

It is unnecessary for us to decide whether, in a law action or proceeding tried by a trial Judge, in lieu of a jury, the trial Judge may, after notifying the parties or their counsel be prohibited from viewing the premises. We simply say that in the instant case, the trial Judge, having decided the case on the basis of his view alone, has not, so far as the record in this Court is concerned,

decided this case in a manner which would permit this Court to give a proper review of the case. See 2 Jones on Evidence, Civil Cases, Fourth Ed., Section 411, page 778, which was revised by the publisher's editorial staff.

The judgment of the Circuit Court of Monongalia County should be reversed for this reason alone; however, because the case at bar was heard, tried and decided by the Judge of the Circuit Court of Monongalia County, in lieu of a jury, it becomes the duty of this Court, for reasons hereinafter stated and under the cases hereinafter cited, to review the record presented to this Court on the instant writ of error to determine what, if any, judgment should be entered here.

The petitioner, Westover Volunteer Fire Department, Inc., will be hereinafter variously referred to as the "fire department" and the "petitioner," and Raymond W. Barker as "Barker" and the "defendant."

The properties involved in this proceeding of the petitioner and of the defendant are enclosed by the lines of contiguous streets, and were embraced within the boundaries of land originally held by L. V. Keck, who originally held the common source of petitioner's and defendant's title, which was embraced in the following boundary of land, which may be described as beginning at the southeast corner of Lane and North Streets, running East along the southern line of North Street 217.50 feet; South along the western line of Cottage Street 446.21 feet; West along the northern line of Holland Avenue 100.23 feet (continuing in a northwesterly direction in a long chord 221.86 feet) to the eastern line of Lane Street; and North along the eastern line of Lane Street 425.13 feet to the point of beginning, the foregoing forming a trapezoid-shaped, or in a sense a rectangular, plot of ground.

In its petition the fire department recites that it is seised and possessed of an estate in fee simple in, and has the right to the possession of, all that certain tract or parcel of land, situate in the Town of Westover,

Grant District, Monongalia County, bounded and described as follows: "Abutting upon the Eastern side of Lane Street a distance of 205.05 feet and upon the Southern line of North Street a distance of 217.5 feet, and upon the Western side of Cottage Street a distance of 446.35 feet, and upon the Northern side of Holland Avenue a distance of 100.28 feet, and upon the property line of property formerly owned by D. C. Reay a distance of 253.03 feet, and upon another property line of said Reay property a distance of 162.8 feet", which tract of land was the same which was conveyed to the fire department by Oscar J. White and Mabel Hess White, his wife, by deed dated July 24, 1950, and was also the same tract of land which was conveyed to Oscar J. White and Mabel Hess White, his wife, by The Monongalia Building and Loan Association, a corporation, on June 11, 1945.

The fire department's petition further alleges that in the month of May, 1947, Monongahela Valley Engineering Company (which the record discloses acted through petitioner's witness, C. W. McCutcheon, a qualified civil and mining engineer, evidently a member of the engineering company, and who was the only engineer employed by the petitioner who testified that he made certain plats but no actual survey of the properties in controversy), made an accurate survey of said tract or parcel of land and ascertained the true boundary lines thereof; and that such engineering company (acting through McCutcheon) made a plat of such survey, which the petition alleges shows thereon the true boundary lines of said tract or parcel of land in controversy, the courses, distances and monuments thereof, a copy of which plat made by McCutcheon, bearing the Monongahela Valley Engineering Company's name thereon, was filed with the petition, marked "Pltfs Ex. 2".

The petition further charges that the defendant is the owner of a tract or parcel of land situated coterminus with the tract or parcel of land owned by the petitioner on the westerly and southerly sides thereof, which tract or parcel of land, the petition also alleges, was conveyed

to Barker by the Receiver of the Bank of Monongahela Valley by deed dated November 1, 1939. The petition further alleges that the true boundary line between the tract or parcel of land owned by the petitioner and the coterminus tract or parcel of land to the south and west of petitioner's land, owned by the defendant, is the line on petitioner's Exhibit 2, marked "Pltfs Ex. 2", being the line designated on the plat as "beginning at a hub in the northern side of Holland Avenue [which the record and plats disclose borders the petitioner's, as well as the defendant's property, on the south]; thence 'N. 6° 27′ E. 253.20 feet to a hub' "; and that the petitioner and the defendant alone have a present interest in the contested boundary line.

The petition further alleges that the "courses" and "distances" of petitioner's tract of 1.676 acres, as shown on petitioner's exhibit No. 2, bearing the legend "Map Showing Property of O. J. White, Lots 39 & 40", are: Beginning on the east side of Lane Street at the northwest corner of the Reay property, along Lane Street N. 19° 13′ E. 205.05 feet to North Street, which evidently borders the fire department's property on the north; thence S. 83° 33′ E. 217.50 feet to Cottage Street, which latter street evidently borders the fire department's property on the east; thence with Cottage Street S. 6° 27′ W. 446.21 feet to Holland Avenue, which, as heretofore stated, borders the properties of both petitioner and defendant on the south; thence with Holland Avenue N. 87° 31′ W. to a hub 100.23 feet to the southeast corner of the Reay property as shown on the plat; thence N. along the line sought to be established N. 6° 27′ E. 253.20 feet to a hub; and thence in a general westerly direction, namely, N. 83° 33′ W. 162.80 feet to the place of beginning. On this plat the line claimed as the boundary line by the petitioner, and designated as running "N. 6° 27′ E. 253.20 feet" was extended by a dash line to North Street, thus dividing the O. J. White property into Lot 39, immediately north of the Reay property, and Lot 40 to the east of Lot 39 and the Reay property. So, according to the plat prepared by McCutcheon, the fire

department's property lies to the north and to the east of the Reay, or Barker, property.

The fire department's petition prays that Barker be made a defendant to the petition, and that the Judge of the Circuit Court of Monongalia County ascertain and designate the true boundary line between the fire department's and Barker's properties.

The defendant Barker, challenging the line established by McCutcheon, as shown on petitioner's exhibit No. 2 ("Pltfs Ex. 2"), employed Marion F. Dunbar, a registered professional engineer, to make a survey of both properties for the purpose of ascertaining the true north-south boundary line between the petitioner's and defendant's properties, which he did. In making this survey, he examined the deeds contained in this record, whereby Keck became vested with title to the tracts of land, which embrace both petitioner's and defendant's tracts of land.

In particular Dunbar examined "DEFENDANT'S EXHIBIT 'A' ", which contained the deed, dated November 1, 1939, whereby O. H. Gall, Receiver of the Bank of the Monongahela Valley, an insolvent corporation, conveyed to the defendant, Raymond W. Barker, in the name of R. W. Barker, the following tracts of land, situate in the City of Westover in Grant District, Monongalia County:

"FIRST TRACT: Beginning at a stake at the northeast corner of a block of ground heretofore sold by L. V. Keck and wife to T. P. Reay and S. V. Reay, being the second lot or parcel herein described, and running thence N. 50 feet to a stake; thence W. about 200 feet to Lane Street; thence with said Lane Street S. about 50 feet to a stake in the northwest corner of said T. P. Reay and S. V. Reay lot, and with a line of said last mentioned lot about 200 feet to the place of beginning;

"SECOND TRACT: Beginning at a stake in the line between the Fairmont and Morgantown Pike, and land of L. V. Keck, 80.7 feet

East of the original line between L. V. Keck and the heirs of Alpheus N. Millan, deceased, and running thence North 200 feet to a stake; thence West about 200 feet to Lane Street; and with said Street about 200 feet to the Fairmont and Morgantown Pike; and with said Pike about 228 feet to the place of beginning, containing one acre, more or less".

Dunbar also examined defendant's "EXHIBIT NO. 1", which contains the deed dated October 20, 1903, whereby W. E. Glasscock, Special Commissioner, Edgar P. Millan and Anna Millan, his wife, and others, conveyed to L. V. Keck, in the name of Leonidas V. Keck, a tract of land containing 4.062 acres, more or less, which tract of land, this record discloses, embraced both tracts of land claimed by the petitioner and the defendant, and which parcel of land was therein described as being situate in Grant District, Monongalia County, of which Alpheus N. Millan, the ancestor of the grantors other than the Special Commissioner, died seised and possessed, and more particularly described as follows: "Beginning in the Morgantown and Fairmont Pike in a line of Mrs. Susan Millan at the intersection of the west side of Lane Street in the Belleview plan of lots, with said line; thence with said Millan N. 17 degrees 38 minutes E. 743 feet to a stake in line of Union Utility Company; thence with said Company S. 59 degrees 38 minutes E. 288.2 feet to a stake in a line with Leonidas V. Keck; thence with said Keck's two lines S. 1 degree 15 minutes W. 40 feet to a stake; thence S. 26 degrees 50 minutes W. 671 feet to a point in the Fairmont Pike; thence along said Pike N. 79 degrees 10 minutes W. 40 feet to a stake; thence N. 60 degrees 44 minutes W. 147.9 feet to the beginning, containing 4.062 acres, more or less, as surveyed by Morris & Burns, Engineers"; defendant's "EXHIBIT NO. 2", which contains the deed of L. V. Keck and wife to T. P. and S. V. Reay, dated March 1, 1904, whereby the grantors conveyed to the grantees therein, a parcel of real estate, lying and being in Grant District, Monongalia County, and bounded and described as follows: "Beginning at a stake in the line between

416

the Fairmont & Morgantown pike and the said land of L. V. Keck 80.7 feet East of the original line between L. V. Keck and the heirs of Alpheus N. Millan, deceased; thence North 200 feet to a stake; thence West about 200 feet to Lane Street and with said street about 200 feet to the said Fairmont and Morgantown Pike, and with said pike about 226 feet to the place of beginning, containing one acre, more or less," which deed recites that it is a portion of the land conveyed by the. Millan heirs to L. V. Keck, and also a portion of the land conveyed to the said L. V. Keck by the widow and heirs of P. H. Keck, deceased, jointly with L. V. Keck's inheritance of the estate of said P. H. Keck, deceased, which deed *inter alia* recites that "* * * the grantors hereby reserve the right to construct and maintain a sewer along the North line of said land to said Lane Street"; and defendant's "EXHIBIT NO. 3", which contains the deed dated March 24, 1904, between L. V. Keck and Ella C. Keck, his wife, and David C. Reay, conveying to the grantee a tract of land in Grant District, Monongalia County, bounded and described as follows: "Beginning at a stake at the northeast corner of a block of ground heretofore sold by said grantors to T. P. Reay and S. V. Reay, thence North 50 feet to a stake; thence West about 200 feet to Lane Street; thence with said Lane Street South about 50 feet to a stake in the north-west corner of said T. P. Reay's and S. V. Reay's lot; and with the line of said last named lot about 200 feet to the place of beginning, and being a portion of the land purchased by said L. V. Keck from the widow and heirs of Alpheus N. Millan, deceased, by deed of record."

The two parcels of land designated as "FIRST TRACT" and "SECOND TRACT", described in "DEFENDANT'S EXHIBIT NO. 'A' ", which contains the deed whereby the defendant, Raymond W. Barker, obtained his title to the land he claims, are, respectively, designated on the plat prepared by plaintiff's witness McCutcheon, contained in "Pltfs Ex. 2", which is the McCutcheon map, as Lots 37 and 38, D. C. Reay; defendant's "EXHIBIT NO. 1", as heretofore stated, which

contains the deed conveying the tract of land containing 4.062 acres, more or less, embracing both tracts of land claimed by the petitioner and the defendant, whereby L. V. Keck obtained the title which may be termed the "common source of title"; defendant's "EXHIBIT NO. 2", containing the deed from L. V. Keck and wife to T. P. and S. V. Reay, dated March 1, 1904, conveying what is designated on the McCutcheon plat as "Pltfs Ex. 2", as Lot 37; and defendant's "EXHIBIT NO. 3", which contains the deed of March 24, 1904, whereby L. V. Keck and wife conveyed to David C. Reay what is shown on the McCutcheon plat as Lot 38.

Defendant's witness Dunbar, in making the actual survey of the tracts in controversy, also considered "PLAINTIFF'S EX. 1", which contains the deed dated July 24, 1950, between Oscar J. White and Mabel Hess White, his wife, to the petitioner fire department, and which deed contains the description heretofore set forth in the fire department's petition, and generally purports to convey Lots 39 and 40, as shown on the plat prepared by McCutcheon and filed as "Pltfs Ex. 2", map. This is the deed whereby the fire department obtained its title to the two tracts of land contiguous to and adjoining what was orginally the D. C. Reay tract of land on the north and east, and the description contained in that deed is one which McCutcheon, who did not make an actual survey of the land in controversy, used in platting the properties, and upon which he based his conclusion that the north-south boundary line between the properties of the petitioner and the defendant is "N. 6° 27′ E. 253.20 feet".

Defendant's witness Dunbar also considered in making his survey, defendant's "EXHIBIT NO. 4", which contains the deed, dated February 9, 1905, between L. V. Keck and wife to Luther S. Brock, and purports to convey to Brock a tract of land lying in Grant District, Monongalia County, described as follows: "Beginning at the South East corner of the land lately conveyed by the said Keck and wife to T. P. and S. V. Reay, by deed, dated March 1st, 1904, and recorded in the office of the

Clerk of the County Court, in Deed Book No. 77, page 105, on the North side of the Morgantown and Fairmont Pike, and running with said lot and a lot conveyed by said Keck and wife, to said D. C. Reay, by deed, bearing date the 24th day of March, 1904, and recorded in said office, in Deed Book No. 77, page 257, and in a straight line, 438 feet from the place of beginning to a 30 foot cross street; thence with said street 100 feet, East to another 30 *feet* street; and with the said last named street, 438 feet south to the said Pike; and with said Pike 100 feet to the place of beginning"; and defendant's "EXHIBIT NO. 5", which contains the deed, dated March 29, 1906, from L. V. Keck and wife to Luther S. Brock, containing a tract of land in Grant District, Monongalia County, described in the said deed as follows: "Beginning at a corner of a lot owned by D. C. Reay, on the east side of a forty foot street, running from the Fairmont and Morgantown Pike North through the land of said L. V. Keck to line fence of Morgantown Brick Co., land; thence with said Street North about 200 feet to a thirty foot Street; thence with last named Street, East, about 125 feet to lot owned by said Grantee; thence with the line of said last mentioned lot; South about 200 feet to said Lot of said D. C. Reay; and thence with the line of said last mentioned Lot, West about 165 feet to the place of beginning".

We note that the Morgantown and Fairmont Pike is the street or roadway designated on "PLAINTIFF'S EXHIBIT NO. 2", the plat made by McCutcheon, and on defendant's "EXHIBIT NO. 9", the plat made by Dunbar, as "Holland Avenue."

So from the foregoing, as well as from the record in this case, it appears conclusively that D. C. Reay by the two deeds conveying what is designated on the McCutcheon plat as Lots 37 and 38, contained in defendant's "EXHIBIT NO. 2", and defendant's "EXHIBIT NO. 3", obtained from the common source of title a grant which is senior to that of petitioner fire department, and, as the title of the defendant Barker was traced back to the

senior grant by Dunbar and, as shown by the exhibits in this case, the lines of that senior grant should prevail over those of any junior grant, which, in the instant case, is the title which the fire department obtained from Oscar J. White and Mabel Hess White, his wife, by deed dated July 24, 1950, contained in "PLAINTIFF'S EXHIBIT 1".

That being so, we hold that the northern and eastern lines of Barker's property are monumental lines. We say this because the deeds exhibited in this record, setting forth the senior grant, as well as the junior grant, show that the descriptions of the land in the conveyances, under which the petitioner obtained its title, establish those lines by running to the corners and the lines of the Reay, now the Barker, property, which, as we have suggested, were carved out of the Keck property by a senior grant.

In fact, petitioner's witness, C. W. McCutcheon, who having testified for the petitioner as its only engineering expert witness, and who had made no actual survey of the property, testified on cross-examination, as shown by the following questions and answers:

"Q. Now, Mr. McCutcheon, if you were asked by the Court to make an impartial survey and a determination of this controversy, and you were handed the deed of both the plaintiff and the defendant, and you had run the chain of title back to the common grantor, and you had noted that the first conveyance from the common grantor was to the property now claimed by the defendant, which survey would you run first?

"A. Well, the one that was made first.

"Q. You would, then, run the defendant, Raymond W. Barker's survey, wouldn't you?

"A. Yes.

"Q. And you would run it exactly as Mr. Dunbar has run it in Exhibit "B", filed with the defendant's answer in this case, wouldn't you?

"A. Yes, sir.

"Q. And after having so run it, because it was the first conveyance by the common grantor, you would have to find for the plaintiff, then, whatever land was left, wouldn't you?

"A. No, I wouldn't find anything.

"Q. And you wouldn't find for the plaintiff the amount of land that the plaintiff is now claiming, would you?

"A. No.

"Q. Because it just wouldn't be there, would it?

"A. No.

"Q. And in running the survey, then, for the plaintiff, you couldn't come any farther than to the defendant's line, could you?

"A. No.

"Q. And that is due to the fact that all of the calls in the plaintiff's deed is to the boundary line of the defendant, isn't it?

"A. (The witness nodded his head in a manner generally interpreted as the affirmative.

"Q. And that is where you would have to stop, wouldn't you?

"A. (The witness again nodded his head in a manner generally construed to be the affirmative.)"

Moreover, from this the witness McCutcheon testified, in substance, that if the Reay lines were taken as correct, the theory upon which the petitioner asserts its title would create an overlap or an interlock. In every case, the lines of a senior grant, which are established in the record as being monumental lines, will prevent an overlap or an interlock. In point 4 of the syllabus of *Vandall, et al.* v. *Casto, et al.*, 81 W. Va. 76, 93 S. E. 1044, this Court held: "Calls in a deed for an adjoining tract

of land are calls for a monument, and where the location of such adjoining tract of land is certain it becomes a monument of the highest dignity." See also *Yonker* v. *Grimm*, 101 W. Va. 711, 133 S. E. 695, in which case in points 5, 6, and 7 of the syllabus this Court held:

"5. A deed is to be interpreted and construed as of its date, and a call in the descriptive portion thereof for the land of another, as a monument, is a call for the true location of such land at the date of the deed.

"6. Where the deed under which plaintiffs claim in an action of ejectment calls for the land of defendant, the true line of defendant's land at the time of the deed must be understood to have been intended.

"7. The burden is on the plaintiff to establish such line to the satisfaction of the jury, who by their verdict must find the true location thereof."

In point 4 of the syllabus of *West Virginia Pulp & Paper Co.* v. *J. Natwick & Co., et al.*, 123 W. Va. 753, 21 S. E. 2d 368, this Court held: "A call of a deed to the line of adjoiner in no case can make an interlock between the land conveyed thereby and the line of the adjoiner, and a dispute between conflicting claims as to true lines and corners does not of itself constitute an interlock."

In *Huffman* v. *Mills*, 131 W. Va. 218, 46 S. E. 2d 787, in a proceeding under Code, 1931, Chapter 55, Article 4, as amended by Section 1, Article 4, Chapter 1, Acts of the Legislature, Regular Session, 1945, such as we now have before us, this Court stated at page 227 of the opinion: "Since, * * * both parties hold their lands through mesne conveyances from the Wilkinson 400 acres, plaintiff's line having come from an original deed which is junior to that of defendant, which calls for a corner and line in the senior conveyance * * *, an adjoiner and not an interlock is involved; and that being so, in order for plaintiff to establish his line, he must

go back to * *" a corner of the senior conveyance. See generally C. J. S., Boundary, Section 53 a. b. c.

It follows that the course "N 83° 33′ W 162.80 feet" from the point which the petitioner claims is the north-western point of the original Reay property on Lane Street, to a hub, established by petitioner's witness Mc-Cutcheon, being the course and distance set forth in the junior conveyance, that is, a conveyance in petitioner's line of title, which the petitioner claims is the northerly line of the defendant's property, should not prevail over the distance for such northerly line set forth in the prior deed of March 24, 1904, whereby L. V. Keck and Ella E. Keck, his wife, granted to David C. Reay: "Beginning at a stake at the northeast corner of a block of ground heretofore sold by said grantors to T. P. Reay and S. V. Reay [that is, the deed contained in "PLAINTIFF'S EXHIBIT NO. 2" of L. V. Keck and wife to T. P. and S. V. Reay, dated March 1, 1904], thence North 50 feet to a stake, *thence West about 200 feet to Lane Street*" (italics supplied).

As a result of the survey Dunbar arrived at the fol-lowing description of the Reay or Barker lands: Begin-ning at a corner at Lane Street and Holland Avenue, which is the southwestern corner of the Reay or Barker property; thence N. 13° 56′ E. 250.08 feet to a point in the east line of Lane Street, which is the northwest cor-ner of the Reay or Barker property; thence S. 79° 39′ E. 195.35 feet to a point which is the northeast corner of the Reay or Barker property; thence S. 08° 33¾′ W. 250.00 feet to a point in the northerly line of Holland Avenue, which is the southeast corner of the Reay or Barker property; thence S. 87° 08′ W. 58.80 feet to a point in the northern line of Holland Avenue; thence by a long chord N. 78° 56½′ W. 114.33 feet to a point in the northern line of Holland Avenue; thence N. 65° 01′ W. 48.73 feet to the place of beginning.

At this point it is to be noted that the northern bound-ary of the original D. C. Reay tract, now the Barker

tract, was found by the Dunbar survey to be 195.35 feet, instead of the 200 feet contained in the senior grant, which is explained in this record by the fact that at the time the original conveyance was made Lane Street evidently was thought to run in a north-south direction; whereas, the easterly line of Lane Street, along the Barker property, was found by Dunbar from an actual survey to run "N 13° 56' E".

The record in this case, in our opinion, fully sustains the accuracy of Dunbar's survey, and that the line set forth in the foregoing description and as shown on the Dunbar plat, a photostatic copy of which is attached to this opinion, running from the northeast corner of the Reay or Barker property; thence S. 08° 33¾' W. 250.00 feet to a point in the northern line of Holland Avenue, which point is the southeast corner of the Reay or Barker property, is the true boundary line in dispute between the petitioner and the defendant.

In so holding, this Court adopts the rule stated in point 4 of the syllabus of *West Virginia Pulp & Paper Co.* v. *J. Natwick & Co., et al., supra,* hereinabove quoted.

This record discloses that at the time the senior Keck conveyance was made, Cottage Street had not been established, though in the conveyance of L. V. Keck and wife to Luther S. Brock the grantors expressly agreed "to open the street on the East side of the land hereby conveyed from said Pike [Holland Avenue] to said cross street [North Street]", and that some time after the deed to Brock, Cottage Street was established. Thus it seems to appear that Keck, in creating what may be termed "the junior line of title", may have conveyed land which he did not own.

In a statutory proceeding, such as the one at bar, the petitioner has the duty of establishing by a preponderance of the evidence the boundary for which he contends, *Huffman* v. *Mills, supra,* page 227 of the opinion, a statutory boundary line case tried by a jury. This, in our opinion, the petitioner herein has failed to do.

On the contrary we are of opinion that on the basis of the paper title alone, the defendant has established by a preponderance of the evidence that the true north-south boundary line between the parties is established by the survey of defendant's witness Dunbar, as shown by "DEFENDANT'S EXHIBIT NO. 9", a photostatic copy of which is filed with this opinion and made a part hereof: "Beginning at the northeast corner of the Barker property, originally the Reay property; thence S 08° 33¾' W 250.00 feet to a point on Holland Avenue, which is the southeast corner of the Reay or Barker property".

In a statutory proceeding such as this to establish a disputed boundary line, a party, who for the statutory period has been in possession of the intervening acreage between the line contended for by a petitioner in such proceeding and that contended for by a defendant therein, may invoke adverse possession. See point 2 of the syllabus of *Huffman* v. *Mills, supra.*

We, however, are of opinion that the petitioner should not prevail on that basis. Though McCutcheon testified that a stone wall erected by defendant at or near the north-south boundary line between the parties is about the true boundary line, and the record contains evidence that petitioner placed some cribbing along what petitioner regarded as its eastern boundary line adjoining the Barker property, which was later removed by the defendant, this record discloses that the stone wall was erected by defendant after he had been advised by his witness Dunbar that such proposed erection was within the defendant's boundary line.

True, this record discloses that the petitioner used the land, immediately to the east of the stone wall and the place where the cribbing had been constructed, for the purpose of holding carnivals, such usage, however, was on occasional and sporadic occasions, that is for a few days about each year for a number of years not embraced within the statutory period. "Occasional acts of dominion extending over the statutory period is not continuous possession." Clark on the Law of Surveying and Bound-

WESTOVER VOL. FIRE DEPT.

S79°39'E → 195.35'

FORMERLY DC. REAY

S79°39'E → 200

SEWER EASEMENT ALONG LINE

EXISTING SEWER → N76°08'W

FORMERLY TR. & S. V. REAY

NEW STONE WALL

CLOSING COR. E

WESTOVER VOL. FIRE DEPT.

LANE ST. 40 FT.

COTTAGE ST. 30 FT.

HOLLAND AVE. 34 FT.

LONG CHORD N78°56'W 114.33'

ARC 115.47'

S87°08'W 50.00

N63°01'W 49.73

N13°99'E 250.08'

200.00'

200.00

250.00 S13°33'W → 208.00

50

TO ALL PERSONS INTERESTED
IN THE TITLE TO THE PREMISES
SURVEYED:-
    I HEREBY CERTIFY THAT THIS IS A
CORRECT PLAN OF A SURVEY MADE UP
ON THE PREMISES THE 30th DAY OF
NOVEMBER, 1954, SHOWING THE
LOCATION OF
    EASEMENTS AND SERVITUDES
APPARENT FROM A SURVEY ON THE
GROUND.

*Marion F. Dunbar*

REGISTERED PROFESSIONAL ENGINEER NO. 1669

BLANK FORMS QUINN—G. E. ELLIOTT CO., PGH., PA

PROPERTY OF: RAYMOND W. BARKER

LOT

SUBDIVISION

WARD        FIRST
TOWN        WESTOVER, WEST VA

SCALE: 1" = 50'     DATE  11-30-54

MORGANTOWN, W. VA.

ATTEST:  A true copy

*A. R. Martin*

Clerk of Monongalia Co. W. Va.

Dept. Lot B

WESTOVER VOL. FIRE DEPT.

S 74°39' E → 195.35'

FORMERLY DR. REAY

S 74°34' E → 200

SEWER EASEMENT ALONG LINE
EXISTING SEWER → N 76°08' W

FORMERLY TR. & S.V. REAY

COTTAGE ST. 30 FT.

WESTOVER VOL. FIRE DEPT.

NEW STONE WALL

LANE ST. 40 FT.

N 13°56' E → 250.08'
200.00

S 08°33' E → 250.00
200.00

LONG CHORD N 78°56' W 114.33
ARC 115.47'

N 65°01' W
48.73'

S 87°08' W
58.80

HOLLAND AVE. S.W. 34 FT.

TO ALL PERSONS INTERESTED
IN THE TITLE TO THE PREMISES
SURVEYED:-
    I HEREBY CERTIFY THAT THIS IS A
CORRECT PLAN OF A SURVEY MADE UP
ON THE PREMISES THE **30th** DAY OF
**NOVEMBER** . 1954 . SHOWING THE
LOCATION OF
    EASEMENTS AND SERVITUDES
APPARENT FROM A SURVEY ON THE
GROUND.

Marion F. Dunbar

REGISTERED PROFESSIONAL ENGINEER NO. *1669*

PROPERTY OF: RAYMOND W. BARKER

LOT

SUBDIVISION
WARD          FIRST
TOWN          WESTOVER , WEST VA.
SCALE: 1" = 50'     DATE  11-30-54

MORGANTOWN, W. VA.

8366
247A-14C.
606-10

ARKWRIGHT TRACING CLOTH—B. K. ELLIOTT CO., PGH., PA.

ATTEST:   A true copy

A. R. Martin

Clerk of Monongalia Co. W. Va.

aries, Second Ed., Section 603. See also *Elyton Land Co.* v. *Denny*, 108 Ala. 553, 119 So. 561.

This proceeding having been heard by the Judge of the Circuit Court of Monongalia County, acting in lieu of a jury, the rule established in *The Koblegard Company* v. *Maxwell*, 127 W. Va. 630, pt. 8 syl., 34 S. E. 2d 116, does not apply. This Court, however, under its holdings in *McKown* v. *Citizens Bank of Ripley*, 91 W. Va. 716, syl., 114 S. E. 271; *Huntington Development & Gas Co.* v. *Topping*, 115 W. Va. 364, syl., 176 S. E. 424; *State ex rel. Hodges* v. *Hutchinson*, 120 W. Va. 181, 184, 197 S. E. 359; and *Lockart* v. *City of Salem*, 130 W. Va. 287, 296, 43 S. E. 2d 239, will render such judgment as the trial court should have rendered.

We, therefore, adopt the result of the Dunbar survey, as shown by his plat, bearing in mind that Lane Street at the time the senior Keck conveyances were made did not run in a true northerly direction, as the descriptions in the Keck deeds, creating the senior line of title, would indicate.

The north-south boundary line between the parties begins at the northeast corner of the Reay or Barker property; thence S. 08° 33¾' W. 250.00 feet to a point on Holland Avenue, which is the southeast corner of the defendant's property.

There is also filed with and made a part of this opinion a photostatic copy of the plat made by the petitioner's witness McCutcheon, marked "Plfs Ex 2".

The judgment of the Circuit Court of Monongalia County is therefore reversed, and judgment is entered here, establishing the boundary line in dispute in this proceeding, as shown in the Dunbar description of the Reay or Barker property and on "DEFENDANT'S EXHIBIT NO. 9".

> *Judgment of the Circuit Court of Monongalia County reversed; judgment entered here.*