# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Frederick W. Suck and Teresa L. Suck,**
**Defendants Below, Petitioners**

**vs)   No. 18-0397** (Jackson County 17-C-36)

**Don E. Reed and Sandra J. Reed,**
**Plaintiffs Below, Respondents**

**FILED**

**June 7, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Frederick W. Suck and Teresa L. Suck, pro se, appeal the April 4, 2018, and April 20, 2018, orders of the Circuit Court of Jackson County regarding the common boundary line of the parties' adjoining parcels of real property. Respondents Don E. Reed and Sandra J. Reed, by counsel Brock D. Stotts, filed a summary response in support of the circuit court's orders.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties own adjoining properties in Jackson County, West Virginia and became involved in a dispute regarding the location of their common boundary line. On April 7, 2017, respondents filed a petition, pursuant to West Virginia Code § 55-4-31, and alleged petitioners "trespassed and encroached upon a portion of [respondents'] land and have committed other acts harmful to [respondents] and their land, [such as] putting structures, garbage, lawnmowers[,] and other belongings on [respondents'] land" and "refused to remove their belongings from [respondents'] land and . . . erected 'no trespassing' signs on [respondents'] real estate." Petitioners filed an answer on May 1, 2017. The parties subsequently waived a jury trial; therefore, the circuit court held a bench trial on January 30, 2018.[1] At trial, the parties introduced numerous exhibits, including the relevant deeds, into evidence. Respondents each testified and further presented the testimony of the owner of the original tract of land out of which the parties' properties were

---

[1]West Virginia Code § 55-4-31 provides, in pertinent part, that "[a] trial by jury may be waived by consent of the parties, and the case be tried by the court."

conveyed and the testimony of the two surveyors they hired to determine the location of the common boundary line. Petitioners did not provide any testimonial evidence, but cross-examined respondents' witnesses.

Following trial, by order entered April 4, 2018, the circuit court (1) determined the common boundary line between the parties' respective properties; (2) enjoined petitioners from trespassing or encroaching on respondents' property, "except for the limited purpose of removing any personal property and/or signs from [respondents'] property";[2] and (3) directed the preparation of an order setting forth the new legal descriptions of the parties' properties with the boundary line correctly described to "be incorporated into the disposition . . . herein upon its entry by this Court." In a subsequent order, entered April 20, 2018, the circuit court set forth the new legal descriptions of the parties' properties, directed the Clerk of the Jackson County Commission to record the April 20, 2018, order in the appropriate deed books, and attached a plat showing the determined boundary line between the parties' properties.

It is from the circuit court's April 4, 2018, and April 20, 2018, orders that petitioners now appeal. In syllabus point one of *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996), we held:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

In an action pursuant to West Virginia Code § 55-4-31, "the petitioner has the burden of establishing by a preponderance of the evidence the boundary for which he contends." Syl. Pt. 6, *Westover Vol. Fire Dept. v. Barker*, 142 W.Va. 404, 95 S.E.2d 807 (1956). West Virginia Code § 55-4-31 provides, in pertinent part:

> Any person having a subsisting interest in real estate and a right to its possession, or to the possession of some share, interest or portion thereof, upon petition filed in the court which would have jurisdiction in an action of ejectment concerning such real estate, shall have the right to have ascertained and designated by the said court, the true boundary line or lines to such real estate, as to one or more of the coterminous landowners.

On appeal, petitioners argue that the circuit court (1) clearly erred by moving the common boundary line between the parties' property instead of determining its location; (2) failed to follow the unambiguous descriptions set forth in the parties' respective deeds; and (3) made a ruling

---

[2]Sara Suck was petitioners' co-defendant in the proceedings below, but is not a party to this appeal.

inconsistent with the testimony at trial. These assignments of error are interrelated in that they each challenge the circuit court's findings regarding the parties' common boundary line; therefore, we address petitioners' arguments together. Respondents argue that petitioners' assignments of error amount to nothing more than mere disagreement with the circuit court's findings. We agree with respondents.

In *State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995), we found that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." Rule 52(a) of the West Virginia Rules of Civil Procedure further provides that, in all actions tried upon the facts without a jury, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Here, after reviewing the January 30, 2018, transcript and the exhibits introduced at trial, we concur with the circuit court's finding that respondents established by a preponderance of the evidence that the common boundary line between the parties' properties was where respondents' surveyors testified it was located.

Having reviewed the circuit court's April 4, 2018, "Order Granting Plaintiffs' Petition for Ascertainment and Designation of Boundary Line of Real Estate" and its April 20, 2018, "Order Confirming Legal Descriptions," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions, which we find clearly show that the descriptions in the parties' deeds were incorrect, necessitating the issuance of new legal descriptions for the parties' properties. The Clerk is directed to attach copies of the April 4, 2018, and April 20, 2018, orders, including the plat attached to the April 20, 2018, order, to this memorandum decision. We, therefore, conclude that the circuit court properly rendered judgment in respondents' favor following the January 30, 2018, bench trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**:  June 7, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

18-0397

# IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA

DON E. REED and
SANDRA J. REED,

    *Plaintiffs,*

v.

                               **Civil Action No. 17-C-36**
                               **JUDGE LORA A. DYER**

FREDERICK W. SUCK,
TERESA L. SUCK, and
SARA SUCK,

    *Defendants.*



## ORDER GRANTING PLAINTIFFS' PETITION FOR ASCERTAINMENT AND DESIGNATION OF BOUNDARY LINE OF REAL ESTATE

On April 7, 2017, Don E. Reed and Sandra J. Reed ("Plaintiffs") filed a *Petition for Ascertainment and Designation of Boundary Line of Real Estate* pursuant to W. Va. Code § 55-4-31. Accordingly, Frederick W. Suck, Teresa L. Suck, and Sara Suck ("Defendants") filed an answer on May 1, 2018, in response to the Petition.

On January, 30, 2018, the Plaintiffs appeared before the Court for the trial of the above-referenced matter, in person and by counsel, Brock D. Stotts, Esq., of the law firm of Goodwin & Goodwin, LLP; the Defendants appeared pro se. On a previous occasion, the parties opted to proceed as a bench trial by waiving their respective rights to present the case to a jury.

Having heard the arguments of counsel, reviewed the filings herein, and consulted the pertinent law, the Court now makes the following Findings of Fact and Conclusions of Law:

1

## FINDINGS OF FACT

1. Plaintiffs filed their *Petition for Ascertainment and Designation of Boundary Line of Real Estate* ("the Petition") in the Circuit Court of Jackson County, West Virginia, on April 7, 2017.

2. In the Petition, Plaintiffs asserted they are the owners of real estate located in Union District, Jackson County, West Virginia, and recorded in the Office of the County Commission in Jackson County, West Virginia, at Deed Book 269, Page 198.

3. The Petition further asserted Defendants are the owners of real estate located in Union District, Jackson County, West Virginia, by deed dated February 22, 2010, and recorded in the Office of the Clerk of the County Commission in Jackson County, West Virginia.

4. Plaintiffs obtained a land survey in July 2016 to verify the boundary line between Plaintiffs' and Defendants' respective properties.

5. Plaintiffs relied on the land survey to assert Defendants had trespassed and encroached upon a portion of Plaintiffs' property.

6. In Plaintiffs' prayer for relief, Plaintiffs requested an order "declaring and confirming the boundary line between Plaintiffs['] and Defendants['] land; a judgment awarding conclusive possession of the land to Plaintiffs and ejecting Defendants therefrom; that Defendants be Ordered to remove all personal property and signs on Plaintiffs' land; and for such further relief as deemed appropriate."

7. Plaintiffs did not demand any monetary damages in the Petition.

8. No other pre-trial motions were filed by either party that had to be decided by the Court. Therefore, the matter was ripe for trial when the trial commenced on January 30, 2018.

2

9. At the trial, Plaintiffs called the following witnesses: Ms. O'Dell Fay Sayre-Goodwin; Plaintiffs Don Edward Reed and Sandra Jean Reed; and Land Surveyor Experts Matthew Gordon Painter and Brian Wayne Lawrence. Defendants did not call any witnesses, but they were afforded an opportunity to cross examine the Plaintiffs' witnesses.

10. In addition to the witnesses, Plaintiffs and Defendants admitted the following exhibits into evidence: Plaintiffs' Exhibit 1, a Deed dated February 1, 1979 ("1979 Deed"); Plaintiffs' Exhibit 2, a Deed dated May 19, 1983 ("Ocheltree Deed"); Plaintiffs' Exhibit 3, a Deed dated May 25, 1983 ("Sayre Deed"); Plaintiffs' Exhibit 4, the July 12, 2016, the revised Paramount Survey, revised on November 7, 2017, by Surveyor Brian W. Lawrence ("Lawrence Survey"); Plaintiffs' Exhibit 5, the Paramount Plat Overlay on Google Earth Image ("Google Image"); Plaintiffs' Exhibit 6, the Petition with Exhibits ("Petition"); Plaintiffs' Exhibit 7, an Easement Agreement dated May 2, 1999 ("Easement Agreement"); Plaintiffs' Exhibit 8, the May 10, 1983, Pitthan and Starcher Survey of 2.00 acres, revised May 16, 1983, by Surveyor H.E. Starcher, Jr. ("Pitthan Survey"); Plaintiffs' Exhibit 9, the December 24, 1997, Chartwell Survey, by Surveyor Harold E. Starcher ("Starcher Survey"); Plaintiffs' Exhibit 10, the December 13, 2005, Point Survey, by Surveyor Delbert F. Bratcher ("Point Survey"); Plaintiffs' Exhibit 11, the January 12, 2006, Prine Land Surveying Field Work, by Matthew G. Painter ("Field Work"); Plaintiffs' Exhibit 12, an undated Survey Overlay Plat ("Overlay"); Defendants' Exhibit 1, a Deed dated November 18, 1985 ("1985 Deed"); Defendants' Exhibit 2, a Deed dated February 22, 2010 ("2010 Deed"); Defendants' Exhibit 3, a highlighted photocopy of Plaintiff's Exhibit 4; Defendants' Exhibit 4, an October 17, 2017, Revised Paramount Survey Drawing, by Surveyor Brian W. Lawrence ("the Lawrence Revision"); Defendants' Exhibit 5, the July 12, 2016, original Paramount Survey, by Surveyor Brian W. Lawrence ("the Lawrence Original"); Defendants'

3

Exhibit 6, a highlighted photocopy of Plaintiff's Exhibit 10; Defendants' Exhibit 7, the May 10, 1983, Pitthan and Starcher Survey of 13.575 acres, revised May 16, 1983, by Surveyor H.E. Starcher, Jr. ("Second Pitthan Survey"); and Defendants' Exhibit 8, a photocopy of Plaintiffs' Exhibit 11.

11. Through testimony by the witnesses and introduction of certain documents, Plaintiffs walked the Court through the title history of the applicable properties.

12. Starting with the 1979 Deed, Plaintiffs introduced evidence showing Beeda Parsons conveyed certain real property to O'Dell Fay Sayre and Jimmy Kenneth Sayre (hereinafter, "Ms. Sayre," "her late husband," and collectively, "the Sayres") which consisted of approximately forty-five (45) acres ("original tract").

13. By way of the Ocheltree Deed, the Sayres conveyed 13.575 acres, more or less ("the Reed/Disputed Property"), from the original tract to Jackie L. Ocheltree and Hallie M. Ocheltree ("the Ocheltrees"). Ms. Sayre still lives on a portion of the original tract which was never conveyed.

14. The property description in the Ocheltree Deed provided the initial boundaries of the Reed/Disputed Property as follows:

> BEGINNING at a point in the center of Lone Oak Road near a fence line which extends to the eastern edge of said road; thence with the center of said road the following courses and distances: N. 50° 39' E. 327.30 feet to a point; N. 44° 20' E. 120.60 feet to a point; N. 38° 07' E. 233.70 feet to a point; thence leaving said road S. 80° W. 299.85 feet to a pin; thence N. 87° 1' W. 157.60 feet to a pin; thence N. 72° 40' W. 139.70 feet to a pin; thence N. 13° 48' W. 874.36 feet to a pin in line of lands conveyed unto H.P. Taylor by deed of record in Deed Book 183, page 113; thence along or near a fence line S. 12° 36' W. 1240.67 feet to a pin; thence S. 72° 03' E. 738.96 feet to the place of beginning, containing 13.575 acres, more or less.

4

15. By way of the Sayre Deed, in late May 1983 the Sayres conveyed to Samuel Sayre two acres, more or less ("the Samuel Sayre/Suck Property"), which was carved out of the original tract, immediately adjacent to and south of the Reed/Disputed Property's 13.575 acres.

16. The property description in the Sayre Deed provided boundaries as follows of the Samuel Sayre/Suck Property:

BEGINNING at a point in the center of Lone Oak Road near a fence line which extends to the eastern edge of said road, corner to lands conveyed unto Jackie L. Ocheltree and Hallie M. Ocheltree by deed of record in Deed Book 257, page 531; thence leaving said road N. 90 W. 753.91 feet to a pin in line of lands conveyed unto H.P. Taylor by deed of record in Deed Book 183, page 113; thence along or near a fence line N. 12° 36' E. 233.76 feet to a pin, corner to lands of Ocheltree; thence with Ocheltree line S. 72° 03' E. 738.96 feet to the place of beginning, containing 2 acres, more or less.

17. Ms. Sayre was a party to the conveyances in the 1979 Deed, the Ocheltree Deed, and the Sayre Deed; she was thus a party to the conveyance of the 13.575 acre Reed/Disputed Property out of the original tract to the Ocheltrees in 1983, and also to the conveyance of the 2.00 acre Samuel Sayre/Suck Property out of the original tract to Samuel Sayre in 1983. Ms. Sayre testified her understanding of the property line between the two parcels at the time of the conveyance. She also explained the intent of the amount of property being conveyed by her and her late husband to Samuel Sayre. Ms. Sayre further testified she recalled her late husband walking the boundary line between the Reed/Disputed Property and the Samuel Sayre/Suck Property at some point in time, and he commented that certain landmarks had been moved from their original location, including stakes.

18. Ms. Sayre testified she did not intend to reserve any portion of the Reed/Disputed Property and she intended Samuel Sayre and the Ocheltree's land to share a common boundary.

5

19.    The Plaintiffs now own the Reed/Disputed Property, and the Defendants own the Samuel Sayre/Suck Property. They currently live on their respective properties as next-door neighbors.

20.    Plaintiff Don Reed testified he became aware of a boundary line dispute after the Parties reached an agreement relating to an easement, wherein Plaintiffs granted Defendants access to the Samuel Sayre/Suck Property through a portion of the Reed/Disputed Property.

21.    Due to Plaintiff Don Reed's belief there was an issue as to the location of the boundary line between the Reed/Disputed Property and the Sayre/Suck Property, Don Reed hired Paramount Surveying to survey the Reed/Disputed Property.

22.    Matthew Painter, land surveyor and owner of Paramount Surveying, worked on the Lawrence Survey and testified on cross-examination by Defendant Frederick Suck as follows:

Q:    Can you explain [to] me why the three surveys[1] do not match? . . .
A:    The biggest portion of that—the reason they do not match, we went back and rotated this drawing over to make it clarify with the back bearing of this line, so it would be easier to see that it was a straight line completely through there, because it's 22'34'40, it's 22'34'40, and it's 22'34'40, all the way through there. The reason it also does not match on this south 14'02'20 east, is because some of the error that was in Mr. Reed's deed is accumulated on this line between south 14'04'20 and how I know—how I came up with setting this line in there, and there's a title, gas well, located right here. We tied into a couple rebar up along this road, which is the Baldwin tract and came down and we applied the same angle and that's how we came up with the setting that pin there original. Until further investigation into the matter, we figured out that there was another pin down here at 35 foot back from this one (indicating), we thought that originally that was their original corner, and that would be the only discrepancy in the actual line. The line is the same.

23.    Plaintiffs called Brian Lawrence, who was responsible for completing the Lawrence Survey. He testified on direct examination as follows:

---

[1] At this point in his testimony, Mr. Painter had just been directed to review Defendants' Exhibits 3, 4 and 5.

6

Q:    Does the land shown on that plat[2] follow the same description of the land conveyed in the deeds from Sayre to Ocheltree and from Ocheltree to Reeds?

A:    Yes.

Q:    And can you tell me what you found with respect to that plat?

A:    That plat when you plotted it out along with the legal description had significant error in closure in it. It does not come back around to where it started. . . .

Q:    And can you tell me what you found with respect to the plat, marked Plaintiffs' Exhibit 9, as it relates to the boundary line?

A:    Okay. This—this one actually shows in detail, two fence lines and one of the property corners being at the intersection of the fence line. And if my memory serves me right, the two calls, be the common line between Suck and Reed, is different than the original plat or legal description and the bottom line is different, but the westerly line is the same. . . .

Q:    Plaintiffs' Exhibit 10 is a Point survey, surveyed on December 13, 2005, which is not certified by a surveyor; are you familiar with that plat?

A:    Yes, sir.

Q:    Can you tell me what you found with respect to that plat as it relates to the boundary line?

A:    It also shows the fence lines on the southerly line of Suck's and westerly side of Suck's And—but the deed—the distance on the westerly line of Suck's is longer than the deed distance.

Q:    Do you have any explanation for that?

A:    Yeah. It appears that whaty they have done is when they surveyed it, they ran to the—to the north and tied into Reed's corner and measured down deed distance from Reed's corner and stopped there.

Q:    Do you agree with the way this survey was performed?

A:    No, because it doesn't take into consideration junior and senior title and the error on the westerly line. . . .

Q:    Okay. So, you know, having looked at the deeds and your work product here, can you explain why the numbers, calls, and courses don't match exactly to the—maybe you could just explain that, don't match the deed exactly, on the deeds exactly?

A:    Most of it goes back to the error of closure. Where—when we start a job, we'll take the deeds and we'll plot them and in theory they should come right back to where you started a job, we'll take the deeds and we'll plot them and in theory they should come right back to where you started, but this situation, not all the deeds did. The Suck's deed come back within 4/10 of a foot, which is pretty good. The Reed's deed missed closing by 172.84 feet, so that tells me there is an error somewhere in that original deed. It doesn't tell me where, it could be one line, it could be one line, it could be every single line could have a little bit of error in it. It could be a distance error. It could be an angle error. It could be both. You don't know that until you start surveying it, and you can determine which calls closely match the original deed calls and which ones do not. And that's how you determine which ones have that error in it.

_____

[2] Referring to the plat depicted in the Petition, Exhibit B.

7

Q: So in your work, you attempted to harmonize . . . the calls contained in the deeds? . . .
A: Yes. . . . Using the found monumentation and taking into consideration the junior and senior rights.

24. When Defendant Frederick Suck cross examined Mr. Lawrence, the following exchange occurred:

Q: [Y]ou're saying that the Reed's property does not close, I think we all know that—[] it doesn't close. Why should correcting their deed come at the expense of the defense by changing the descriptions and calls and footages? Because they clearly do not match the deed?
A: They don't match it because there's error that was in the original deeds.
Q: In the Plaintiffs' deed?
A: Well, I believe that there is also error in your deed, angular error. It may close, but based upon the exhibit that I have that shows the two surveys that are highlighted, it clearly does not match what's on the ground. The angles come off of that westerly line do not match whatsoever, what's on the ground. I can make something close mathematically, but that doesn't mean it's correct.
Q: Can you make it close by following the deed description?
A: No. . . .
Q: [C]an you make the Plaintiffs' property close simply by using the call on the deed from this point to this point?
A: It's not that simple You can't do it that way without taking into consideration the found monuments on the ground.

25. Defendant further asked Mr. Lawrence to explain the junior/senior rights during this line of questioning:

Q: [D]o you agree that the Plaintiffs' property was cut out first?
A: Yes. . . .
Q: So if their property was cut out first, and described in a deed recorded in the courthouse, do you think that theirs should stand?
A: Theirs came first. . . And that's the whole purpose of junior and senior rights.
Q: Okay. So if their—so if their property is satisfied at this point, you—
A: I don't think it's satisfied at that point.
Q: You don't think so?
A: No, based upon the discrepancy between the found monuments. I don't believe that it's satisfied at the original deed distance, because there is an extra 70 feet between the found monuments.

8

## CONCLUSIONS OF LAW

26. The Circuit Court of Jackson County has jurisdiction over this dispute. *See* W. Va. Code § 55-4-31; *see also, e.g.,* Syl. Pt. 2, *Gauley Coal Land Co. v. O'Dell*, 144 W. Va. 730, 730, 110 S.E.2d 833, 834 (1959) ("Equity will not entertain a suit to remove cloud upon title to real estate, if the sole matter in dispute is the location of boundary lines, or to enjoin an alleged trespass on the disputed land, in the absence of an averment that an action at law is pending or is about to be brought to determine the title."

27. The Plaintiffs have the burden of establishing by a preponderance of the evidence the boundary for which they contend under the provisions of W. Va. Code § 55-4-31. Syl. Pt. 6, *Westover Volunteer Fire Dep't v. Barker*, 142 W. Va. 404, 405, 95 S.E.2d 807, 808 (1956).

28. The general rule is "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Development Co. v. United Fuel Gas Co*, 147 W. Va. 484, 128 S.E.2d 626 (1963).

29. However, when a deed is unclear and ambiguous on its face, the Court must look to evidence of the parties' intent in construing the deed. *Zimmerer v. Romano*, 223 W. Va. 769, 778-79, 679 S.E.2d 601, 610-11 (2009) (citing Syl. Pt. 1 *State v. Herold*, 76 W. Va. 537, 85 S.E. 733 (1915) ("For ascertainment of the intent of the parties to a deed in which the description of the subject matter is inconsistent, contradictory and ambiguous, extrinsic evidence is admissible.").

30. "The term 'ambiguity' is defined as language 'reasonably susceptible of two different meanings' or language 'of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161,

9

166 (1995) (quoting Syl. pt. 1, in part, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985).

31.     "In construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith." Syl. Pt. 5, *Zimmerer*, 223 W. Va. 769, 679 S.E.2d 601 (quoting Syl. Pt. 1, *Maddy v. Maddy*, 87 W. Va. 581, 105 S.E. 803 (1921)).

32.     "In ascertaining a disputed boundary the calls in the respective deeds cannot be disregarded, if they can be applied and harmonized in any reasonable manner." Syl. Pt. 1, *Somon v. Murphy Fabrication & Erection Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977).

33.     The Supreme Court of Appeals further declared as follows:

> To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal declarations. But, if a latent ambiguity is disclosed by such evidence, such for instance as that the terms of the writing are equally applicable to two or more objects, when only a certain one of them was meant, then prior and contemporaneous transactions and collocutions of the parties are admissible, for the purpose of identifying the particular object intended.

Syl. Pt. 2, *Snider v. Robinett*, 78 W. Va. 88, 88 S.E. 599 (1916).

34.     Here, only the Plaintiffs presented evidence to the Court regarding the most favorable interpretation of the ambiguity.

35.     Testimony of those professional land surveyors who surveyed the Reed/Disputed Property and/or the Samuel Sayre/Suck Property, which was presented at the trial of this matter, confirms the deed descriptions are in error because they do not properly close. Such testimony also

10

demonstrated that previous surveys performed on the subject properties did not harmonize with found monumentation, which physically exists on the subject properties.

36. It was not clear from the evidence presented whether the boundary lines failed to close due to one of the monument markers or other pins being moved from its original location. Nevertheless, the evidence presented to the Court clearly demonstrates there was an error in the property description, which created a cloud on title relating to the Reed/Disputed Property's boundary lines between the properties owned by Plaintiffs and Defendants.

37. Plaintiffs' evidence further proved the senior title related to the Reed/Disputed Property, which created the initial boundary line issue.

38. As the senior conveyance, the property description would relate back to that conveyance.

39. The Defendants did not deny the existence of a boundary line issue. However, Defendants presented no evidence in contradiction to the testimony of the two professional land surveyors called by the Plaintiffs, Mr. Painter and Mr. Lawrence. Nor did the Defendants contradict the expert witness testimony of Mr. Lawrence, who testified the most reasonable approach to reconcile the discrepancy in the Reed/Disputed Property's boundary description was set forth in the Lawrence Survey. In fact, aside from the documents themselves, the only evidence presented by the Defendants was their own interpretation of the various deeds and surveys.

40. In applying the evidence presented to this Court regarding the latent ambiguity, the Court FINDS the Lawrence Survey is the most reasonable interpretation of the best method to address the ambiguity; Brian Lawrence explained during his testimony how he reviewed, applied, and harmonized all the calls and courses in each deed and applied them in a reasonable and appropriate manner, in conjunction with found monumentation, to determine the most appropriate

11

resolution of the discrepancy in the boundary lines. The Court **FINDS** his resolution of the discrepancy, as set forth in the Lawrence Survey and admitted into evidence at trial as Plaintiffs' Exhibit 4, should control the outcome in this case. Accordingly, the Court **FINDS** Plaintiffs' have established the boundary line by the preponderance of the evidence, and the court **SHALL** adopt the Lawrence Survey as confirmation of the location of that boundary line.

## ORDER OF THE COURT

**WHEREFORE**, based on the foregoing, it is hereby **ORDERED, ADJUDGED,** and **DECREED**:

1. The boundary line between the property of Plaintiffs Don Reed and Sandra Reed and Defendants Frederick W. Suck, Teresa L. Suck, and Sara Suck, **SHALL** be established by the Lawrence Survey, admitted into evidence as Plaintiff's Exhibit 4, and attached as Exhibit A to this Order.

2. Plaintiffs **SHALL** file with the Court a correct legal description of both subject properties based upon the Lawrence Survey. Such legal description **SHALL** be prepared by the appropriate professional, **SHALL** be filed as a Proposed Order pursuant to W. Va. T.C.R. 24.01, and **SHALL** be incorporated into the disposition set forth herein upon its entry by this Court. Said Proposed Order **SHALL** direct the County Clerk of Jackson County, West Virginia, to record said Order in the Office of the Clerk of the County Commission of Jackson County, West Virginia at Deed Book 269, Page 198, and at Deed Book 409, Page 656. All costs associated with the preparation of such Order shall be the sole responsibility of the Plaintiffs.

12

3. Defendants Frederick W. Suck, Teresa L. Suck, and Sara Suck are **ORDERED** to remove any and all personal property and signs, which are now on Plaintiffs' property, within thirty (30) days from the date of entry of this Order. Defendants Frederick W. Suck, Teresa L .Suck, and Sara Suck are henceforth **ENJOINED** and **ORDERED** to cease trespassing and/or encroaching on Plaintiffs' property, except for the limited purpose of removing any personal property and/or signs from Plaintiffs' property as ordered herein. After the expiration of thirty (30) days from the entry of this Order, Defendants shall not enter across said property line without the express permission of Plaintiffs. Any failure to comply with this Order may result in a finding of Contempt of Court, in addition to any other existing legal remedies.

4. The County Clerk of Jackson County, West Virginia, **SHALL** record this Order reflecting the boundary lines relating to real property located at Union District, Jackson County, West Virginia and of record in the Office of the Clerk of the County Commission of Jackson County, West Virginia at Deed Book 269, Page 198, and at Deed Book 409, Page 656.

5. A copy of the Plat prepared by Brian Lawrence, Plaintiff's Exhibit 4, **SHALL** also be recorded by the County Clerk at Deed Book 269, Page 198, and at Deed Book 409, Page 656, as further evidence of the correct boundary lines between property of record.

6. The parties shall each pay their own attorneys' fees as well as any and all other costs, expenses, and fees associated with this civil action. Such is to include any and all expenses necessary to legally effectuate and otherwise make of record with the County Clerk the Ordered conveyance of real property interests herein.

7. The objections and exceptions of the parties to any adverse ruling of this Order are herein noted and preserved as a matter of record;

13

8.     This is a **FINAL JUDGMENT** appealable to the West Virginia Supreme Court of Appeals as set forth in *West Virginia Code* § 58-5-1; and

9.     This matter is hereby stricken from the active docket of the Court.

10.    The Court **DIRECTS** the Circuit Clerk to enter this Order and distribute attested copies to (1) Brock Stotts, Esq., counsel for the Plaintiffs; and (2) *pro se* Defendants Frederick W. Suck, Teresa L. Suck, and Sara Suck.

ENTERED this ___4th___ day of ___April___ 2018.

_____
Hon. Lora A. Dyer, Circuit Judge
Fifth Judicial Circuit, Jackson County
State of West Virginia


**DON E. REED and
SANDRA J. REED,**

*Plaintiffs,*

**v.**

**FREDERICK W. SUCK,
TERESA L. SUCK, and
SARA SUCK,**

*Defendants.*


**Civil Action No. 17-C-36 (Jackson)**

14

18·0397

# IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA

**DON E. REED AND**
**SANDRA J. REED,**

*Plaintiffs,*

v.

Civil Action No.: 17-C-36

**FREDERICK W. SUCK,**
**TERESA L. SUCK AND**
**SARA SUCK,**

*Defendants.*

2018 APR 20 PM 3: 51
BRUCE W. DEWEES
JACKSON COUNTY
CIRCUIT CLERK
RIPLEY, WV 25271
RECORDED

## ORDER CONFIRMING LEGAL DESCRIPTIONS

On the 4th day of April, 2018, the Court entered an Order Granting Plaintiffs' Petition for Ascertainment and Designation of Boundary Line of Real Estate and ORDERED Plaintiffs to file with the Court a correct legal description of both subject properties based upon the Survey admitted into evidence at trial as Plaintiffs' Exhibit 4 and attached to the Order as Exhibit A. Thus, the descriptions are laid down as more fully shown on the plat prepared by Paramount Surveying LLC, a copy hereto attached as Exhibit A and made a part of the descriptions.

The Court now makes the following findings:

1. The Reed land consisting of all that certain lot, tract or parcel of land lying and being situate within Union District, Jackson County, West Virginia, is bound and described as follows:

> **BEGINNING** at a point in the centerline of Secondary Route 87/4, said point also being a common corner to Suck, thence leaving Secondary Route 87/4 and with said Suck for the following course:
>
> N. 78° 28' 00" W., passing over 5/8" rebars with caps set at 87.39', 209.39', and 295.99', a total distance of 733.36' to a 5/8" rebar set, said rebar also being a

common corner to Suck and in the line of land now or formerly owned by Franklin Hayes, from which a 5/8" rebar with cap found at the Southwest corner of Suck bears S. 12° 36' 00" W. at 233.76', thence leaving said Suck and with Hayes for the following course:

N. 12° 36' 00" E., passing a 5/8" rebar with cap set at 1033.26', a total distance of 1,310.70' to a 5/8" rebar found in the line of said Hayes and a common corner to Gary Baldwin, thence leaving said Hayes and with Gary Baldwin for the following four (4) courses:

S. 14° 38' 10" E. 1015.40' to a 5/8" rebar with cap set, thence;

S. 86° 51' 30" E. 139.70' to a 5/8" rebar with cap set, from which a gas well head bears N. 15° 41' 30" W. at 54.60', thence;

N. 84° 38' 30" E. 157.60' to a 5/8" rebar with cap set, thence;

N. 71° 48' 00" E., passing a 5/8" rebar with cap set on the Westerly side of Secondary Route 87/4 at 277.60', in all a total of 297.97' to a point in the centerline of said Route, thence along the centerline for Secondary Route 87/4 for the following eleven (11) courses:

S. 20° 01' 00" W. 7.35' to a point, thence;

S. 26° 00' 00" W. 36.30' to a point, thence;

S. 30° 47' 50" W. 40.62' to a point, thence;

S. 32° 08' 30" W. 56.75' to a point, thence;

S. 28° 56' 30" W. 35.04' to a point, thence;

S. 31° 24' 20" W. 114.92' to a point, thence;

S. 38° 12' 00" W. 57.44' to a point, thence;

S. 41° 51' 00" W. 100.79' to a point, thence;

S. 42° 21' 20" W. 109.91' to a point, thence;

S. 41° 08' 20" W. 66.34' to a point, thence;

S. 41° 57' 10" W. 54.90' to the place of beginning, containing 13.45 acres, more or less, and being more fully described on a plat prepared by Paramount Surveying LLC, hereto attached and made a part of this description.

2018 APR 20 PH 3: 51

BRUCE W. DEWEES
JACKSON COUNTY
CIRCUIT CLERK
RIPLEY, WV 25271

RECORDED

2. The Suck land consisting of all that certain lot, tract or parcel of land lying and being situate within Union District, Jackson County, West Virginia, is bound and described as follows:

**BEGINNING** at a point in the centerline of Secondary Route 87/4, said point also being a common corner to Don & Sandra Reed, thence leaving Secondary Route 87/4;

S. 83° 57' 20" W. 773.85' to a 5/8" rebar with cap found at or near a fence corner, thence with line of land now or formerly owned by Franklin Hayes for the following course:

N. 12° 36' 00" E. 233.76' to a 5/8" rebar with cap set in the line of Hayes and at the common corner to Don & Sandra Reed, from which a 5/8" rebar found at the common corner to said Reed's and Gary Baldwin bears N. 12° 36' 00" E. at 1,310.70', thence leaving Hayes and with the line of Don & Sandra Reed for the following course:

S. 78° 28' 00" E., passing over 5/8" rebars with caps set at 437.37', 523.97' and 645.97', a total distance of 733.36' to the place of beginning, containing 1.97 acres, more or less, and being more fully described on a plat prepared by Paramount Surveying LLC, hereto attached and made a part of this description.

Accordingly it is hereby **ORDERED** that the descriptions set forth above are hereby confirmed, approved and incorporated into the disposition set forth in the Order Granting Plaintiffs' Petition for Ascertainment and Designation of Boundary Line of Real Estate entered April 4, 2018; and it is further

**ORDERED** that the County Clerk of Jackson County, West Virginia shall record this Order Confirming Legal Descriptions in the law order book, in the current deed books at Deed Book 269, Page 198 and at Deed Book 409, Page 656, and index the same in the names of all of the parties.

The Clerk shall send certified copies of this Agreed Order to all counsel and parties of record.



**GRAPHIC SCALE**

200    100    0    200

1 INCH = 200 FEET

NORTH ORIENTED TO PREVIOUS SURVEY BY: PITTHAN & STARCHER, INC.

**PLAT OF REVISED BOUNDARY RETRACEMENT SURVEY FOR:**
**DON & SANDRA REED**
SHOWING A PARCEL OF LAND CONTAINING
**13.45 ACRES, +/-**
SITUATE WITHIN UNION DISTRICT
JACKSON COUNTY, WEST VIRGINIA

3/8" REBAR FOUND,
WOODEN FENCE POST &
5/8" REBAR WITH CAP FOUND
LABELED POINT SURVEYING & MAPPING

5/8" REBAR FOUND

_JUNIOR/SENIOR RIGHTS:_
REED PROPERTY: ORIGINALLY SURVEYED ON 05/10/1983
BY PITTHAN & STARCHER, INC.
ORIGINAL DEED DESCRIPTION ON 05/19/1983

SUCK PROPERTY: ORIGINALLY SURVEYED ON 05/12/1983
BY PITTHAN & STARCHER, INC.
ORIGINAL DEED DESCRIPTION ON 05/25/1983

_NOTES:_
THE ORIGINAL PARTITIONS THAT CREATED THE DEEDS OF RECORD FOR THE PROPERTIES OF GARY BALDWIN, DON & SANDRA REED AND SARA SUCK WERE ALL SURVEYED AT VARIOUS TIMES BY PITTHAN & STARCHER, INC.

AS PART OF THIS RESURVEY, THE ABOVE MENTIONED DEEDS OF RECORD WERE PLOTTED AND COMPARED, IN ORDER TO IDENTIFY ANY DIFFERENCES IN THE DEED BEARINGS, DISTANCES, CORNER DESCRIPTION, MATHEMATICAL CLOSURE, ETC. THE ABOVE MENTIONED DEEDS OF RECORD WERE EXAMINED AND DETERMINED TO CONTAIN THE FOLLOWING MATHEMATICAL ERROR OF CLOSURE:

SUCK DEED = S10°48'10"W AT 0.40'

REED DEED = S42°05'40"E AT 172.84'

BALDWIN DEED = S61°12'10"E 199.10'

DURING THE COURSE OF THIS RESURVEY, THE DISTANCE ALONG THE WESTERLY LINE OF THE SUCK AND REED PROPERTY WAS DETERMINED TO CONTAIN 70.03 FEET MORE THAN THE ORIGINAL DISTANCE WITHIN THE DEEDS OF RECORD FOR SUCK AND REED. THIS DIFFERENCE IN DISTANCE CAN EASILY BE EXPLAINED BY THE MATHEMATICAL ERROR OF CLOSURE WITHIN THE ORIGINAL REED DEED. SINCE THE SUCKS DEED DOES NOT CONTAIN A SUBSTANTIAL MATHEMATICAL ERROR OF CLOSURE, THE RECORD DISTANCE OF 233.76' WAS USED FROM THE 5/8" REBAR WITH CAP FOUND AT OR NEAR THE FENCE CORNER.

AS A RESULT OF THIS RESURVEY, THE FINAL ACREAGE OF BOTH THE SUCK AND REED PROPERTIES CLOSELY MATCH THE ORIGINAL DEEDS OF RECORD AS WELL.

**FRANKLIN HAYES**
TAX MAP 10 PARCEL 44.1
DEED BOOK 376 PAGE 989

| LINE | BEARING | DISTANCE |
|------|-----------|----------|
| L1 | S20°01'00"W | 7.35' |
| L2 | S26°00'00"W | 36.30' |
| L3 | S30°47'50"W | 40.62' |
| L4 | S32°08'30"W | 56.75' |
| L5 | S28°56'30"W | 35.04' |
| L6 | S31°24'20"W | 114.92' |
| L7 | S38°12'00"W | 57.44' |
| L8 | S41°51'00"W | 100.79' |
| L9 | S42°21'20"W | 109.91' |
| L10 | S41°08'20"W | 66.34' |
| L11 | S41°57'10"W | 54.90' |

**GARY BALDWIN**
TAX MAP 10 PARCEL 61.1
DEED BOOK 433 PAGE 174

27.44'

S14°38'10"E  1015.40

S12°36'00"W) 1310.70' (TOTAL DISTANCE)
(BASIS OF BEARINGS)

963.23'

S86°51'30"E
139.70'
DIRT ROADWAY
GAS WELL
N15°41'30"W
54.60' TIE
(20.37')
(277.60')
N71°48'00"E
297.97'
N84°38'30"E
157.60'

**DON & SANDRA REED**
TAX MAP 15 PARCEL 42
DEED BOOK 392 PAGE 323

**RETRACEMENT=13.45 ACRES, +/-**
ORIGINAL ACREAGE=13.575 ACRES

CORNER LOCATION BASED UPON DEED DISTANCE FROM MONUMENT FOUND TO THE NORTH

EXCESS FOOTAGE
SEE NOTE

CORNER LOCATION BASED UPON DEED DISTANCE FROM MONUMENT FOUND TO THE SOUTH

70.03

(S12°36'00"W 233.76')
(ORIGINAL DEED)
(BEARING & DISTANCE)

N78°28'00"W  733.36' TOTAL DISTANCE
(437.37')
(86.60')
(122.00')

DRIVEWAY ENROACHMENT
(87.39')

SECONDARY ROUTE 87/4
30' RIGHT OF WAY

5/8" REBAR WITH CAP FOUND

**SARA SUCK**
TAX MAP 15 PARCEL 43
DEED BOOK 409 PAGE 656

ORIGINAL ACREAGE=2 ACRES, +/-
ACREAGE BASED UPON THIS RESURVEY=1.97 ACRES, +/-

**SURVEYOR'S CERTIFICATION:**
THE UNDERSIGNED SURVEYOR HEREBY CERTIFIES THAT THE PROPERTY LINES SHOWN IN HEAVY SOLID LINES HAVE BEEN SURVEYED AND MONUMENTED, AND THAT THIS PLAT IS A TRUE AND ACCURATE REPRESENTATION OF THAT SURVEY.

BRIAN W. LAWRENCE
LICENSED
No. 2056
STATE OF
WEST VIRGINIA
PROFESSIONAL SURVEYOR

BRIAN W. LAWRENCE, P.S. 2056

**LEGEND**

| | |
|---|---|
| ———————— | PROPERTY LINE |
| — — — — — | TRACT LINE |
| — — — — — | ROW LINE |
| —x—x—x— | EXISTING FENCE LINE |
| ◉ | 5/8" REBAR W/CAP SET |
| ◙ | FOUND MONUMENTATION |
| ● | CALCULATED POINT |
| | FENCE POST |

| DISTRICT: UNION | COUNTY: JACKSON | STATE: WV |
|---|---|---|
| FIELD WORK BY: M.G.P, BT & HG | DRAWN BY: JKS | |

**PARAMOUNT SURVEYING, LLC**
506 S. CHURCH STREET
RIPLEY, WV 25271
(304)-372-5224

DATE: 7/12/16
REV: 11/07/17
FILE NAME: 16R-55
SCALE: 1"=200'

Entered this 20th day of April, 2018.

*Reed, et al v Suck et al*
*Civil Action No. 17-C-36*

_____
HONORABLE LORA A. DYER, CIRCUIT JUDGE

**Submitted by:**

_____
BROCK D. STOTTS (WVSB 11174)
GOODWIN & GOODWIN, LLP
P. O. Box 349
RIPLEY, WV 25271
304.372.2651
*Counsel for Plaintiffs*

RECORDED
2018 APR 20 PM 3: 51
BRUCE W. DEWEES
JACKSON COUNTY
CIRCUIT CLERK
RIPLEY, WV 25271

*<EXHIBIT A ATTACHED>*

A TRUE COPY. CERTIFIED THIS THE

APR 20 2018

_____
Bruce W. Dewees
CIRCUIT COURT
JACKSON COUNTY, WEST VIRGINIA